UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

JUANNELIOUS BENJAMIN MURRAY, SR.,        United States District Court
                                          Case No. 21-12848
                    Debtor,               Judge Paul D. Borman

_____/

JUANNELIOUS BENJAMIN MURRAY, SR.,

                    Plaintiff/Appellant,        Bankr. Case No. 19-43879-mlo
                                                Chapter 13
v.                                              Judge Maria L. Oxholm

SAFIR LAW P.L.C.,                               Adv. Pro. No. 19-04275-mlo

                    Defendant/Appellee.

_____/

## OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT'S NOVEMBER 22, 2021 ORDER DISMISSING ADVERSARY PROCEEDING (ADVERSARY PROCEEDING DOCKET NO. 59)

Appellant Juannelious Benjamin Murray, Sr. has filed six unsuccessful Chapter 13 bankruptcy cases between 2015 and 2019, all of which were dismissed for failure to make proposed plan payments. (See ECF No. 11-6, Trustee's Motion to Dismiss Chapter 13 Petition, *In re Murray*, Bankr. Case No. 19-43879, DE No. 30, p.3.) As part of his latest Chapter 13 case, filed in 2019, Murray filed an adversary proceeding against Appellee Safir Law, P.L.C., which had represented Murray in a successful state court personal injury lawsuit against his insurer, Allstate

Insurance Company, in 2015 and 2016. (ECF No. 3, Bankr. Record, PageID.210-33.)

On August 20, 2019, the bankruptcy court dismissed Murray's 2019 Chapter 13 case "for failure to comply with the terms and conditions set forth in the Order Regarding Trustee's Motion to Dismiss," and also dismissed Murray's adversary proceeding against Safir Law.

On appeal, this Court affirmed the dismissal of the adversary proceeding on subject-matter jurisdiction grounds. *In re Murray*, No. 19-12613, 2020 WL 5291964 (E.D. Mich. Sept. 4, 2020). Murray appealed, and the United States Court of Appeals for the Sixth Circuit affirmed the dismissal of Counts 1 and Counts 3 through 6, but remanded Count 2 to the bankruptcy court for the subject-matter determination. *In re Murray*, No. 20-1910, 2021 WL 4026732 (6th Cir. Sept. 3, 2021).

On remand, the bankruptcy court, following oral argument, issued an oral Opinion and Order declining to exercise residual jurisdiction over Count 2 of the adversary proceeding, and dismissing the case. (ECF No. 3, Bankr. Record, PageID.185-98, Bench Opinion.) Murray now appeals the dismissal of Count 2 of his 2019 adversary proceeding. This matter has been fully briefed. The Court does not believe that oral argument will aid in its disposition of the appeal; therefore, it is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule

2

7.1(f)(2). For the reasons set forth below, the Court affirms the bankruptcy court's decision dismissing the adversary proceeding.

## I. BACKGROUND

In 2015, Safir Law, P.L.C. filed an auto negligence action for no-fault benefits against Allstate Insurance Company on Juannelious Murray, Sr.'s behalf in the Wayne County Circuit Court (the "Allstate Case"). (ECF No. 3, Bankr. Record, PageID.1453-54, Safir Aff. ¶ 4). While that lawsuit was pending in state court, Murray commenced a Chapter 13 bankruptcy case, Case No. 16-46387, on April 27, 2016 (the "2016 Chapter 13 Case"). Murray claimed three exemptions as to the Allstate Case. (*Id.* PageID.238, Chapter 13 Exemptions.)

On June 29, 2016, Safir Law agreed, through a facilitator, and with Murray's authority, to settle the Allstate Case in principal for $61,000.00. (*Id.* PageID.1454, Safir Aff. ¶ 5.) The case was settled with the expectation that Murray's medical providers would be paid out of the settlement proceeds, and that Safir Law would negotiate payment of a compromised amount with each provider. (*Id.* ¶¶ 5, 7.) Safir Law subsequently bargained a reduction in medical provider debt from $66,145.33 to $24,063.61. (*Id.* ¶ 7.)

On August 2, 2015, when Murray was at the Safir Law office to sign the settlement agreement and release, he told Safir Law for the first time about his

3

pending Chapter 13 case. (*Id.* ¶ 8.) Safir Law's counsel called Murray's bankruptcy attorney the next day, who advised Safir Law's counsel that he thought the Bankruptcy Case "will get dismissed." (*Id.* ¶ 9.) Murray alleges that Allstate drew the $61,000 settlement check, payable to Safir Law and Murray, on August 4, 2016, and that Safir Law then sent an email to Murray's bankruptcy attorney, Marshall D. Schultz, regarding Murray's medical bills. (ECF No. 3, Bankr. Record, PageID.215, AC.) That email, regarding "Juannelious Murray List of Medical Bills to be paid" stated:

> Good Morning,
>
> Below is a list of the medical providers and bills plus the amounts to be paid for Mr. Murray's accident-related treatment. Please let us know if you need any additional information.
>
> Henry Ford Hospital: $727.38 owed, $727.38 to be paid
> Advanced Spine & Headache Center $906.00 owed, $700.00 to be paid
> Alliance Medical Billing: $3,548.00 owed, $2,365.33 to be paid
> Premier MRI/CT: $922.00 owed, $800.00 to be paid
> MKS Physical Therapy: $6,535.00 owed, $4,000.00 to be paid
> Orthokinect: $100.00 owed, $75.00 to be paid
> Michigan CRNAs: $2,182.00 owed, $1,300.00 to be paid
> Synergy: $12,495.03 owed, $0.00 to be paid (Allstate to Indemnify and hold harmless and defend client)
> Silver Pine Imaging: $15,900.00 owed, $0.00 to be paid (Allstate to Indemnify and hold harmless and defend client)
> Total Toxicology: $1,492.00 owed, $0.00 to be paid (Allstate to Indemnify and hold harmless and defend client)
>
> Have a great day.

4

(ECF No. 11-2, 8/4/2016 email, PageID.2003; ECF No. 3, Bankr. Record, PageID.699, 8/4/2016 email.)

On October 20, 2016, the bankruptcy court dismissed the 2016 Chapter 13 Case based on Murray's 12.6 percent payment history. (ECF No. 3, Bankr. Record, PageID.256-57, Order Dismissing Chapter 13 Case.)

About a week later, on October 28, 2016, the state court in the Allstate Case, after a hearing, entered the anticipated *Covenant* Order that approved and provided for the distribution of the settlement funds and the discharge of Allstate's liability. (ECF No. 3, PageID.1473-75.)[1]  The Order stated, in relevant part:

---

[1] As Safir Law explains in its brief, at the time of the 2016 settlement, it was settled law in Michigan "that a medical provider has independent standing to bring a claim against an insurer for the payment of no-fault benefits." *Covenant Med. Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 313 Mich. App. 50, 54 (2015), *rev'd*, 500 Mich. 191 (2017). Section 3112 of Michigan's No-Fault law was read to require "that the insurer apply to the circuit court for an appropriate order directing how the no-fault benefits should be allocated" if it wished to insulate itself from the possibility of double liability. *Id.* An injured no-fault plaintiff's broad release of an insurer in exchange for a settlement did not release the insurer as to most provider claims unless the insurer obtained entry of the order provided for by Mich. Comp. Laws § 500.3112 (a *Covenant* order). *Id.* While the Michigan Supreme Court reversed the Court of Appeals decision in *Covenant* in 2017, and held that healthcare providers did not have a statutory right of action against a no-fault insurer for recovery of personal injury protection benefits, *Covenant*, 500 Mich. at 200, the Michigan Legislature "overruled" *Covenant* by amending Mich. Comp. Laws § 500.3112 to give healthcare providers the right to file a direct claim or cause of action against an

that the settlement is approved and distribution of the net proceeds is to be distributed as follows:

### DISTRIBUTION OF SETTLEMENT

| | |
|---|---|
| Total Amount of Settlement | $61,000.00 |
| Total Costs: | $104.35 |
| Amount after costs: | $60,895.65 |
| Attorney Fee: | $20,298.55 |
| Amount after Costs and Attorney Fee: | $40,597.10 |
| Amount of Plaintiff Investment Funding, LLC Lien (litigation funding) | $12,500.00 |
| Net Amount: | $28,097.10 |

IT IS FURTHER ORDERED the remaining amount after the above payments to be distributed per agreements with the following providers as follows:

| | Owed: | To be Paid: |
|---|---|---|
| Henry Ford Hospital | $ 727.38 | $ 727.38 |
| Advanced Spine & Headache Center | $ 906.00 | $ 700.00 |
| Mendelson Kornblum Ortho. | $ 21,337.66 | $ 14,296.23 |
| Alliance Medical Billing | $ 3,548.00 | $ 2,365.00 |
| Premier MRI/CT | $ 922.00 | $ 600.00 |
| MKS Physical Therapy | $ 6,535.00 | $ 4,000.00 |
| Orthokinect | $ 100.00 | $ 75.00 |
| Michigan CRNAs | $2,182.00 | $ 1,300.00 |
| | $34,076.04 | $22,763.94[2] |

---

insurer for reimbursement for services provided to an injured person. *Spectrum Health Hosp. v. Mich. Assigned Claims Plan*, 330 Mich. App. 21, 28 n.4 (2019).

[2] Appellee explains in his brief that the $22,763.94 figure reflected in the Order is an arithmetical error, and that the correct total was $24,063.61. (ECF No. 3, Bankr. Record, PageID.1453-54, Safir Aff. ¶ 10.)

(*Id*.) The Order further provided for Murray to receive $4,100.26 from the settlement fund. (*Id*.)

While Murray alleges that Allstate drew the $61,000 settlement check payable to Safir and Murray on August 4, 2016, he admits in his Adversary Complaint that Safir did not receive the check until sometime after the entry of the October 28, 2016 *Covenant* Order by the state court. (ECF No. 3, Bankr. Record, PageID.215-16, AC ¶¶ 25, 30.)

In July 2018, Murray filed a five-count complaint in Wayne County Circuit Court (WCCC), Case No. 18-007944-NM, against Safir Law and its principal, Attorney Joel Safir (collectively "Safir Law"). (ECF No. 3, Bankr. Record, PageID.571-6-73, 2018 WCCC Complaint.) Murray alleged in Counts 1 through 4 that Safir Law "improperly embezzled or converted $44,190.03 for their own personal use from the $61,000.00 Allstate Insurance Company settlement fund." (*Id.* PageID.572-73.) Safir Law filed a motion for summary disposition as to Counts 1-4 in November 2018, and on January 18, 2019, the trial court dismissed Murray's embezzlement and conversion-related counts and awarded "sanctions against plaintiff's counsel as a consequence of his failure to perform, prior to the filing of the complaint, the reasonable inquiry required by [court rule]." (ECF No. 3, Bankr.

7

Record, PageID.556-59, 1/18/19 Order.) On January 19, 2019, the state court further ordered payment of $250.00 in sanctions, and ordered the complaint sealed. (*Id.*)

Murray alleged in Count 5 of the 2018 WCCC Complaint that Safir Law committed malpractice by failing to become authorized by the bankruptcy court to represent Murray in the Allstate Case. (ECF No. 3, Bankr. Record, PageID.580-583, WCCC Complaint, ¶ 41). Murray further alleged that Safir Law breached its duty by failing to "take reasonable steps to protect Murray's interests as a bankruptcy debtor regarding [the Allstate settlement check held by Allstate's defense counsel . . . to become] authorized by the U.S. Bankruptcy Court to promptly move the Wayne County Circuit Court to enter a proper order regarding remittance of the parties' settlement" and to refrain from taking an unearned attorney fee. (*Id*. ¶ 49.) Murray claimed that Safir Law proximately caused the dismissal of his 2016 Chapter 13 case and the loss of "all Chapter 13 benefits and discounts" he would have received as a Chapter 13 debtor." (*Id*. ¶¶ 51-52.)

On February 26, 2019, Safir Law filed a summary disposition motion in the state court as to Count 5. (ECF No. 3, Bankr. Record, PageID.1428-47, MSD Brief.) Safir Law argued that Murray's malpractice claim was baseless and should be dismissed, and also sought sanctions against both Murray and his counsel. (*Id.*)

Murray failed to file a response to that motion. The motion for summary disposition was set for hearing on March 29, 2019.

On March 18, 2019, Murray filed another Chapter 13 bankruptcy case, Case No. 19-43879 ("2019 Chapter 13 Case").[3] On March 28, 2019, Murray filed a Motion to Reopen the 2016 Chapter 13 Case. Then, at 3:44 a.m. on the morning of March 29, 2019 (the date set for the summary disposition hearing in the 2018 WCCC Case), Murray filed a notice of removal of the 2018 WCCC Case, that *he* had filed in state court, to the bankruptcy court, and specifically to the long-closed 2016 Chapter 13 Case. (ECF No. 3, Bankr. Record, PageID.539-41, 1071-73, Notices of Removal.) The Notice of Removal stated that the WCCC Complaint was "related to" the dismissed 2016 Chapter 13 Case, and that the Notice was filed within 90 days of Murray's Motion to Reopen the 2016 Chapter 13 Case and within 90 days after the 2019 Chapter 13 Case was commenced. (*Id.*) The removal had the effect of causing the state court to administratively close the state court case. (*Id.* PageID.548-49, 3/29/19 Entry.) *See* 28 U.S.C. § 1446(d) (stating that upon filing of a notice of removal, "the State court shall proceed no further unless and until the case is

---

[3] Murray had filed two other bankruptcy cases between the 2016 Case and the 2019 Case, which were both dismissed for failure to make payments and subsequently closed, Case Nos. 2017-41767 and 2018-52144.

remanded."). Safir Law contends that Murray's counsel subsequently told him that he had filed the removal papers because he had failed to file a response brief to Safir Law's summary disposition motion in the 2018 WCCC Case. (ECF No. 3, Bankr. Record, PageID.536-37, Safir Aff. ¶ 5.)

The bankruptcy court initially reopened the 2016 Chapter 13 Case on April 11, 2019, but then vacated that order and closed that case on April 12, 2019, because Murray was not permitted to have two pending open bankruptcy cases. The bankruptcy court ordered that any future pleadings be filed in Murray's pending 2019 Chapter 13 Case. (ECF No. 3, Bankr. Record, PageID.1632, 1638-39, Order Reopen, Order Vacate.)

On June 19, 2019, Murray filed a six-count adversary complaint ("AC") against Safir Law in his 2019 Chapter 13 Case. On August 20, 2019, the bankruptcy court dismissed Murray's 2019 Chapter 13 case "for failure to comply with the terms and conditions set forth in the Order Regarding Trustee's Motion to Dismiss," and also dismissed his adversary proceeding against Safir Law. (Case No. 19-43879, ECF No. 72; Case No. 19-04275, ECF No. 21.) The bankruptcy court further ordered that Murray "is barred and enjoined from filing subsequent proceedings under Title 11 of the United States Code for a period of 180 days from the date of this order." (Case No. 19-43879, ECF No. 72.)

On appeal, this Court affirmed the dismissal of the adversary proceeding on subject-matter jurisdiction grounds. *In re Murray*, No. 19-12613, 2020 WL 5291964 (E.D. Mich. Sept. 4, 2020). Murray appealed, and the United States Court of Appeals for the Sixth Circuit affirmed the dismissal of Count 1 (to set aside the dismissal of Murray's 2016 Chapter 13 Case) and Counts 3 through 6 (state law claims), but remanded Count 2 for the subject-matter determination. *In re Murray*, No. 20-1910, 2021 WL 4026732 (6th Cir. Sept. 3, 2021).

In Count 2 of the AC – the only Count remaining – Murray alleges that Safir Law refused to deliver the $61,000 settlement check to the Chapter 13 estate when "apparently requested" to do so by Murray's then bankruptcy lawyer, and that this alleged refusal was a violation of Safir Law's "turnover" obligations under 11 U.S.C. § 542, and a violation of the automatic stay imposed by 11 U.S.C.  362(a). (ECF No. 3, Bankr. Record, PageID.220-24, AC ¶¶ 45-56.) Murray requests that Safir Law "deliver and account" for the $61,000 settlement proceeds "to the Chapter 13 Estate" and enter judgment for Murray for actual damages, punitive damages, and attorney fees. (*Id.*) The Sixth Circuit Court of Appeals explained in its September 3, 2021 Opinion that the claims in Count II – consisting of a turnover claim, a violation-of-the-automatic-stay claim, and an attorney fee claim – are "core proceedings" over which the bankruptcy court retained subject matter jurisdiction, even though the

11

underlying bankruptcy case had been dismissed. *In re Murray*, No. 20-1910, 2021 WL 4026732, at *5 (6th Cir. Sept. 3, 2021) (explaining that "dismissal of an underlying bankruptcy case does not automatically strip a federal court of residual jurisdiction to dispose of matters after the underlying bankruptcy case has been dismissed.") (quoting *In re Javens*, 107 F.3d 359, 364 n.2 (6th Cir. 1997)). However, the exercise of such residual jurisdiction is left to the "sound discretion" of the bankruptcy court. *Id.* The Sixth Circuit stated that "[f]our factors guide that discretion: 'economy, convenience, fairness, and comity.'" *Id.* (quoting *Peabody Landscape Constr. Inc. v. Schottenstein*, 371 B.R. 276, 281 (S.D. Ohio 2007)). The Sixth Circuit Court of Appeals thus remanded this case for the bankruptcy court to consider whether to "exercise its discretion regarding whether to retain residual jurisdiction over count two." *Id.*

On remand from the Sixth Circuit Court of Appeals, the bankruptcy court issued a briefing schedule to address the determination of whether the Court should exercise its retained subject-matter jurisdiction to adjudicate the claims in Count 2 of the adversary complaint, and then held oral argument on November 18, 2021. (ECF No. 3, Bankr. Record, PageID.148-84, Transcript.)

On November 22, 2021, the bankruptcy court read its Opinion and Order from the bench. (ECF No. 3, Bankr. Record, PageID.185-98, Bench Opinion.) The court

first analyzed each of the claims alleged in Count 2, and then specifically addressed the four factors identified in the Sixth Circuit Court of Appeals' remand instructions.

First, with respect to Murray's turnover claim, the court noted that 11 U.S.C. § 542 grants turnover rights under two circumstances: (1) for turnover of property that the trustee "may use, sell, or lease" under 11 U.S.C. § 363; and (2) for turnover of property that the debtor "may exempt" under 11 U.S.C. § 522. (*Id*. PageID.186-87.) The court found neither circumstance to be applicable in this case. (*Id*.) The court held that because Murray's bankruptcy petition had been dismissed, there was no bankruptcy estate, and therefore no available mechanism to distribute any property to creditors and, thus, no property that the trustee may "use, sell or lease" pursuant to § 363. (*Id*.) Likewise, the court found that Murray was not a "debtor" that may exempt property under § 522. (*Id*.) The court further found that it was undisputed that Safir Law did not "possess, have custody of, or control" the settlement proceeds while the Chapter 13 Case was pending, as required by § 542 (applying to property "in possession, custody, or control, *during the case*, …). (*Id*.) The court found that Murray "seeks a windfall whereby the settlement proceeds are disgorged *to him* for *his* discretionary use with no responsibility to pay creditors, an extremely unfair result." (*Id*. PageID.187-88 (emphases added).)

13

The court next considered Murray's claim for violation of the automatic stay, stating that it was not "certain [from its review of the complaint and proceedings] regarding the creditor's conduct that violated the automatic stay." (*Id*. PageID.188.) The court stated that it appeared that Murray was alleging that Safir Law "failed to expedite the settlement of the state law claims and turn over the funds to [Murray]." (*Id*.) The court found, however, that, as Murray admitted in his adversary complaint, the proceeds were in the possession of Allstate, not Safir Law, while the bankruptcy was pending, and were only received by Safir Law after Murray's 2016 Chapter 13 Case had been dismissed, and thus it was difficult to understand how Safir Law interfered with the property of the bankruptcy estate. (*Id*.) The court further noted that while Murray alleged that the settlement check became the property of the bankruptcy estate when the check was issued on the August 4, 2016, Safir Law did not "possess or control the check" until after the bankruptcy case was dismissed. (*Id*.) The court found that "the settlement proceeds were distributed according to the state court order … [and] it does not appear that the proceeds of the state law claim were ever property of the bankruptcy estate *at the time* of the alleged stay violation." (*Id*. PageID.189 (emphasis added).)

Third, with regard to Murray's attorney fee claim, the court found that there is no dispute that Safir Law received its compensation after the bankruptcy petition

had been dismissed. (*Id*. PageID.189, 191.) The court noted that Murray's complaint does not identify a section of the code that has been violated, but presumes that Murray seeks review of the fees for a determination of reasonableness, pursuant to 11 U.S.C. §§ 329, 330. (*Id.* PageID.189.) The court found that even if Safir Law had been required to file a statement pursuant to 11 U.S.C. § 329, it is doubtful that the court would have found the compensation excessive, reasoning that: (a) the distribution of the proceeds, including the compensation to Safir Law, was approved by the state court order; (b) the one-third fee on the recovery is standard for such cases; and (c) it appeared that Safir Law provided a valuable service to plaintiff. (*Id*. PageID.191) The court noted that § 329 requires excess compensation be returned to the bankruptcy estate or the source – in this case, Allstate. (*Id*.) There was no longer any bankruptcy estate, and the court found that "it would be unfair to require the settlement proceeds to be disgorged to [Murray]" and that there was no reason to return the funds to Allstate. (*Id*.) The court was convinced that Safir Law's compensation was reasonable and that it "would be extremely unfair to require disgorgement" under the circumstances of this case. (*Id*. PageID.192.) Rather, claims regarding attorney fees, professional liability, or violation of ethical obligations could be pursued in state court, and the court noted that, in fact,

15

"[Murray] had a pending claim in state court that he improperly removed through the 2016 closed bankruptcy petition on March 29, 2019." (*Id*.)

The bankruptcy court noted that the state court had dismissed four counts of the 2018 WCCC complaint and sanctioned Murray's counsel for his failure to perform the reasonable inquiry required under the applicable state court rule before filing the complaint. (*Id*.) The bankruptcy court further noted that, at the hearing before the bankruptcy court, Murray's counsel agreed that the state court case was removed on the morning the summary disposition was to be heard, and that he had failed to file a response brief. (*Id*.) The court found that, "[Murray's] counsel appears to be engaged in forum shopping. Having failed to file a response to a dispositive motion in the state court, he decided to try his luck in the bankruptcy court by improperly removing the state court case to a closed bankruptcy case." (*Id*. PageID.193.)

The court next turned to the four factors used to determine whether to retain jurisdiction over the adversary proceeding – economy, convenience, fairness, and comity. (*Id*.) The court first noted that while it allowed Murray time and opportunity to brief the residual jurisdiction issue "per the Sixth Circuit directive to analyze the four applicable factors," he did not address those relevant factors in his brief or at oral argument. (*Id.*) The bankruptcy court then reviewed and applied the analysis

16

employed in *Peabody Landscape Construction, Inc. v. Schottenstein*, 371 B.R. 276, 281 (S.D. Ohio 2017), finding that in this case, like in *Peabody*, the adversary proceeding "is in its infancy and not tied to the bankruptcy as the settlement proceeds were not received until after the bankruptcy was dismissed. [Murray's] ability to litigate the dispute over attorney fees in state court is not impaired. Any inconvenience to [Murray] is slight." (*Id*. PageID.195.)

The bankruptcy court concluded that "under the circumstances, it would be bad policy to retain residual jurisdiction" where: (a) there is no longer a bankruptcy estate; (b) the requested relief would result in a windfall to Murray; (c) Murray benefitted from the Allstate settlement because some of his medical debts were paid; and (d) Murray is a serial filer of Chapter 13 cases with no intent to pay creditors and no legitimate bankruptcy purpose. (*Id*. PageID.195-97.) The court stated:

> Under these circumstances, it would be bad policy to retain residual jurisdiction when there is no longer a bankruptcy estate. As a result of the dismissal of the petition, [Murray] has no duties or responsibilities to the bankruptcy court or under the bankruptcy code; specifically, [Murray] is not bound by the section 11 USC [§] 521, duties of the debtor. Granting the relief requested would result in a windfall to [Murray] with no requirement to pay any of his creditors with the funds, an unfair result. As a result of the order of the Wayne County Circuit Court case, some of [Murray's] medical debts have been paid.
>
> Further, [Murray's] track record shows that he is a serial filer that has no intent to repay creditors. [Murray] has filed seven bankruptcy cases since 2002 as follows: 02-62891, a Chapter 7 case, and then 15-49408,

17

15-57101, 16-46387, 17-481767, 18-52144, and 1943879. The 2002 case is indicated with a Chapter 7 with no discharge. The other six cases were Chapter 13s that were not confirmed and dismissed for failure to make plan payments. Further, in the 2019 Chapter 13 petition, the Court imposed a 180-day bar to refiling any bankruptcy petitions.

[Murray] does not appear to have a legitimate bankruptcy purpose when filing bankruptcy petitions. As argued on the record during the hearing, [Murray] seeks disgorgement of the settlement proceeds to the trustee so that they can be returned to [Murray] because there is no bankruptcy estate. This would be again, an unfair result.

Finally, while the Court gave [Murray] ample opportunity to provide a reason for the Court to exercise residual jurisdiction, no compelling basis has been provided to the Court. Accordingly, the Court declines to retain jurisdiction and this adversary proceeding is dismissed. . . .

(*Id*. PageID.195-97, paragraphing modified).

On December 7, 2021, Murray filed his Notice of Appeal of the bankruptcy court's decision in this Court. (ECF No. 1, Notice of Appeal.) Murray then filed his Brief on Appeal on February 9, 2022, and a Corrected Brief on Appeal on February 11, 2022. (ECF Nos. 5, 6.) Appellee Safir Law's brief in response was filed on March 18, 2022 (ECF No. 11), and Murray's reply brief was filed on April 1, 2022 (ECF No. 14).

## II.  STANDARD OF REVIEW

"When reviewing a bankruptcy court's decision, a district court functions as an appellate court, and applies the standard of review generally applied in the federal

courts of appeals." *United States v. Pastula* (*In re Pastula*), 227 B.R. 794, 795 (E.D. Mich. 1997) (internal citation omitted). As such, "the bankruptcy court's findings of fact are reviewed under the clear-error standard, and its conclusions of law are reviewed de novo." *B-Line, LLC v. Wingerter* (*In re Wingerter*), 594 F.3d 931, 935-36 (6th Cir. 2010)

Because the exercise of jurisdiction over residual matters after an underlying bankruptcy case is "left to the sound discretion of the trial court," the decision not to exercise residual jurisdiction is reviewed for abuse of discretion. *Javens v. City of Hazel Park (In re Javens)*, 107 F.3d 359, 364 n.2 (6th Cir. 1997) (internal citations omitted); *see also In re McCoy*, 560 B.R. 684, 685 (6th Cir. BAP 2016) (when the decision is "entrusted to the sound discretion of the trial court, the bankruptcy court's decision should not be overturned absent an abuse of discretion"). "A court abuses its discretion when it commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact." *Gourlay v. Sallie Mae, Inc.* (*In re Gourlay*), 465 B.R. 124, 126 (6th Cir. BAP 2012) (quoting *Auletta v. Ortino* (*In re Ferro Corp. Derivative Litig.*), 511 F.3d 611, 623 (6th Cir. 2008)). "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to

the issue, then there is no abuse of discretion." *Barlow v. M.J. Waterman & Assocs., Inc.* (*In re M.J. Waterman & Assocs., Inc.*), 227 F.3d 604, 608 (6th Cir. 2000) (citations omitted).

The reviewing court may affirm on any grounds supported by the record, even if those grounds differ from those relied upon by the Bankruptcy Court. *See JPMorgan Chase Bank, N.A. v. First Am. Title Ins. Co.*, 750 F.3d 573, 581 (6th Cir. 2014) (affirming district court despite error in applying Michigan law because "applying federal law yields the same result").

## III.  ANALYSIS

The Sixth Circuit Court of Appeals remanded this case with the express directive that the bankruptcy court "consider whether to exercise its retained subject-matter jurisdiction to adjudicate the claims in count two [of the adversary complaint]," guided by the four factors of "economy, convenience, fairness, and comity." *In re Murray*, 2021 WL 4026732, at *5. The bankruptcy court, on remand, did just that. It first analyzed the three claims in Count Two of the AC – a turnover claim, an automatic stay violation claim, and an attorney fee claim – and then used its "sound discretion" to determine whether to exercise residual jurisdiction over those claims, applying the four factors – economy, convenience, fairness, and comity.

20

On appeal, Murray fails to directly address the bankruptcy court's rulings or explain how the bankruptcy court abused its discretion, and he in fact never mentions the four factors, let alone even use the words "economy," "convenience," "fairness," or "comity" anywhere in his opening brief. This Court finds that Murray has failed to show that the bankruptcy court misapplied the law or abused its discretion, and thus affirms the bankruptcy court's November 22, 2021 Order declining to exercise residual jurisdiction and dismissing the adversary proceeding.

## A.    The Bankruptcy Court's Analysis of the Count Two Claims

The bankruptcy court began its Bench Opinion with an analysis of the three claims in Count II of the AC. First, as to the claim under 11 U.S.C. § 542, "Turnover of property to the estate," the bankruptcy court explained that this section permits turnover under two circumstances – (1) the turnover of property that the trustee may use, sell or lease under section 363, or (2) the turnover of property that the debtor may exempt under section 522. (ECF No. 3, Bankr. Record, PageID.187, Bench Opinion.) The court found that because Murray's 2016 Chapter 13 Case was long ago dismissed, "there is no bankruptcy estate [and], as a result, no available mechanism to distribute property to creditors, thus, the debtor may not use, sell, or lease pursuant to section 363," and that Murray is not a debtor eligible to exempt property. (*Id.*) The bankruptcy court further noted that Safir Law "did not possess,

21

have custody of, or control the settlement proceeds" while Murray's Chapter 13 Case "was pending as required by section 542," and found that Murray was seeking "a windfall for himself" by having the settlement proceeds in toto "disgorged to him for his discretionary use with no responsibility to pay creditors – an extremely unfair result." (*Id.*)

Murray does not address any of the bankruptcy court's points in his appellant brief, much less explain how that court abused its discretion. He instead generally faults Safir Law for its alleged inaction in turning over the litigation proceeds while the 2016 Chapter 13 Case was still pending. Murray contends that the fact "that the settlement proceeds were not received [from Allstate] until after the Chapter 13 case is not determinative." (ECF No. 6, Appellant Brief at p. 17, PageID.1941.) However, that assertion ignores section 542's directive that its applies to property "in possession, custody, or control, *during the case*, that the trustee may use, sell, or lease" or that "the debtor may exempt." 11 U.S.C. § 542(a) (emphasis added). While the parties in the state court litigation had reached a settlement in principal, it is undisputed, as the bankruptcy court found, that Safir Law did not have "possession, custody, or control" of those funds "during the case." Further, as Safir Law points out in its brief, any turnover claims did not survive dismissal of the 2016 Chapter 13 Case. Here, the 2016 case was dismissed on October 20, 2016, and that dismissal

operated to "vacate[] any order, judgment or transfer ordered" under section 542, and to "revest[] the property of the estate in the entity in which such property was vested immediately before the commencement of the case." 11 U.S.C. § 349(b)(2) and (3); *see also In re Central Processing Servs., LLC*, No. 19-13427, 2020 WL 5596094, at *6 (E.D. Mich. Sept. 18, 2020) (explaining that a dismissal of a case "aims to return the financial status that existed before the bankruptcy petition was filed"). Thus, any turnover claim did not survive the October 20, 2016 dismissal of the 2016 Chapter 13 Case.

The bankruptcy court next turned to Murray's automatic stay claim in count two, and found that while Murray appears to fault Safir Law for failing to expedite payment of the settlement funds while the 2016 bankruptcy case was open, because those funds were in the possession of Allstate in August 2016, and it is undisputed that Safir Law did not possess or control those funds until after the dismissal of the bankruptcy case, those funds were never property of the bankruptcy estate and thus "it is difficult to understand how [Safir Law] interfered with the property of the bankruptcy estate." (ECF No. 3, Bankr. Record, PageID.188-89, Bench Opinion.) Murray's contention in his brief that Safir Law should have done more to expedite receipt of the funds during the pendency of the 2016 Chapter 13 Case fails to demonstrate an abuse of discretion by the bankruptcy court. When counsel for Safir

23

Law first learned of Murray's 2016 Chapter 13 Case on August 3, 2016, when Murray came in to sign the settlement release, he contacted Murray's bankruptcy counsel to inform him of the settlement and the payments to be made to the medical providers. However, Safir Law did not have possession or control over any settlement funds in August 2016, and in fact never had possession of those funds during the pendency of the bankruptcy. Thus, Safir Law did not "interfere" with property of the bankruptcy estate in violation of the automatic stay provision.[4]

The bankruptcy court then analyzed Murray's attorney fee claim in count two, and stated that the adversary complaint does not identify a section of the code that has been violated, and complains only of "unapproved attorney fees." (ECF No. 3, Bankr. Record, PageID.189, Bench Opinion.) The bankruptcy court first found it undisputed that Safir Law did not receive compensation until <u>after</u> the bankruptcy case was dismissed, and thus the fees were never part of the bankruptcy estate. The court further stated that, even if Safir Law was required to file a section 329 statement regarding compensation, addressing the "reasonableness" of the attorney

---

[4] As Safir Law points out in its appellee brief, the United States Supreme Court's decision in *City of Chicago, Ill. v. Fulton*, 141 S. Ct. 585 (2021), further supports dismissal of Murray's automatic stay claim. In *Fulton*, the Supreme Court construed Section 362(a)(3)'s prohibition of "any act … to exercise control over property of the estate" and concluded that "mere retention of estate property after the filing of a bankruptcy petition does not violate § 362(a)(3) of the Bankruptcy Code." *Id.* at 592.

fees pursuant to 11 U.S.C. §§ 329 and 330, the fees would be reasonable, noting that the fees had been approved by a state court order, that a one-third contingency fee is standard for payments to plaintiff's counsel, and that Safir Law provided a valuable service to Murray by negotiating reduced payments to his medical providers. (*Id.* PageID.190-91.) The bankruptcy court further noted that because there is no bankruptcy estate, it would be "extremely unfair" to disgorge the proceeds to Murray under the circumstances of this case. (*Id.* PageID.191-92.)

Murray argues that the bankruptcy court abused its discretion by failing to retain jurisdiction to order Safir Law to disgorge its attorney fees and pay those fees to Murray. He argues that he received no benefit from Safir Law's services, and that the bankruptcy court should have ordered Safir Law to disgorge "the rest of the approximate $41,000 because § 330(a)(4)(B) required that the attorney fee be based on a benefit" to the debtor. (ECF No. 6, Appellant Brief, PageID.1932.) However, Murray ignores that the "approximate $41,000" settlement payment includes repayment of the $10,000 litigation funding loan (plus interest) Murray obtained against the settlement proceeds, a substantial reduction in Murray's medical debts to the listed providers, and the $4,100 paid to Murray at the time of distribution. Murray does not otherwise argue that the attorney fee in this case was unreasonable.

25

**B.    The Bankruptcy Court Exercised Its Sound Discretion to Decline to Retain Subject-Matter Jurisdiction Over Count Two of the AC, Applying the Four Factors of Economy, Convenience, Fairness, and Comity**

The Sixth Circuit Court of Appeals remanded this case "for the bankruptcy court to consider whether to exercise its retained subject-matter jurisdiction to adjudicate the claims in count two" of the adversary complaint by considering the following four factors: "economy, convenience, fairness, and comity." *In re Murray*, 2021 WL 4026732, at *5.

On remand, the bankruptcy court considered and applied those four factors to the facts in this case and determined that they weigh in favor of dismissing the adversary proceeding. (ECF No. 3, Bankr. Record, PageID.193-97, Bench Opinion.) The bankruptcy court explained that the adversary proceeding "is in its infancy and not tied to the bankruptcy as the settlement proceeds were not received until after the bankruptcy was dismissed." (*Id.* PageID.195.) The court explained that, for the reasons set forth earlier in the opinion, Murray is not entitled to relief on his turnover and violation of the automatic stay claims, and his attorney fee claim is similar to the claim he brought in the state court. The court explained that Murray's ability to litigate the dispute over attorney fees in the state court (where he first brought his claim in 2018, before he improperly removed that claim to the closed 2016

Bankruptcy Case) is not impaired and any inconvenience to Murray would be slight. (*Id.* PageIE.192, 195.) The bankruptcy court found that it would be "bad policy to retain jurisdiction" in that court when there is no longer a bankruptcy estate and plaintiff is not bound by the 11 U.S.C. § 521 duties of a debtor, and the relief requested would result in a windfall for plaintiff. (*Id.*) The bankruptcy court stated that Murray's counsel appeared to be engaging in forum shopping by improperly removing the state court case to a closed bankruptcy case. (*Id.* PageID.193.) The court further noted that Murray is a serial filer of bankruptcy cases with "no intent to repay creditors," and that Murray "seeks disgorgement of the settlement proceeds to the trustee so that they can be returned to [Murray] because there is no bankruptcy estate," which would be an "unfair result." (*Id.* PageID.196). Accordingly, the bankruptcy court found that the "factors used to determine whether to retain jurisdiction over this adversary proceeding weigh in favor of dismissing the adversary proceeding." The bankruptcy court declined to retain jurisdiction over count two of the adversary proceeding, and dismissed the adversary proceeding.

In his appellate brief, Murray fails to discuss any of the factors or explain how the bankruptcy court failed to properly exercise its discretion in consideration of those four factors. In fact, the words "economy," "convenience," "fairness," and "comity" do not appear anywhere in Murray's brief. Tellingly, the bankruptcy court

similarly noted in its Bench Opinion that Murray failed to address the relevant factors in his briefing, in his supplemental briefing, or in his argument before the bankruptcy court. (Bench Opinion, PageID.193, 195.) Murray claims in his reply brief that he did address the four factors, but he cites only to non-existent pages in the appellate brief (pages 29-31 do not exist) and possibly to a brief he had filed before the bankruptcy court (Doc. 42). (there is no ECF No. 42 in this case) (See ECF No. 14, Murray Reply, PageID.2093.) He contends that this brief on appeal "simply continues to argue that the bankruptcy court wrongly overrode those Bankruptcy Code mandates." (*Id.*)

Accordingly, this Court finds that because of Murray's failure to address the bankruptcy court's application of the four factors, he has waived this argument on appeal. *See Sault St. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1988) (failure to address an issue constitutes a waiver or abandonment of the argument); *see also Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012) (issues raised in a perfunctory manner are deemed waived); *McPherson v. Kelley*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.") (citation and quotation omitted).

In any event, this Court adopts the reasoning of the bankruptcy court in its November 22, 2021 Bench Opinion, and affirms that decision declining to exercise residual jurisdiction and dismissing the adversary proceeding.

## IV.  CONCLUSION

For the reasons set forth above, the Court AFFIRMS the bankruptcy court's November 22, 2021 Opinion and Order declining to exercise residual jurisdiction over count two of the adversary complaint and dismissing the adversary proceeding.

IT IS SO ORDERED.

s/Paul D. Borman

Dated: May 27, 2022                          Paul D. Borman
                                             United States District Judge